**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**KEVIN LEROY BUFORD,**

Plaintiff,

v.

**CITY OF MINNEAPOLIS, and OFFICER STEVEN TATRO, personally, individually, and in his capacity as a Minneapolis Police Officer,**

Defendants.

Civil No. 00-1868 (MJD/JGL)

**ORDER**

---

APPEARANCES

Albert Goins, Sr., Esq., and Kathryn Rene Burke Brown, Esq., for Plaintiff.

Timothy Skarda, Esq., and Mylene Peterson, Esq. for Defendants.

---

JONATHAN LEBEDOFF, Chief United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Chief Magistrate Judge of District Court on June 4, 2002, on Plaintiffs' Motion to Amend Complaint to Add a Claim for Punitive Damages (Doc. No. 23). The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.



JUN 1 ( 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD.
DEPUTY CLERK

## I. INTRODUCTION

This case involves alleged violations of the federal Civil Rights Act and Minnesota state law. Plaintiff offers the following in support of his proposed amendment: Defendant City of Minneapolis' Answer to the Complaint; portions of the Minneapolis Police Internal Affairs Department ("IAD") Investigation Report; portions of the Civilian Review Authority ("CIA") Investigation Report; Plaintiff's preliminary expert report regarding the Conduct of Defendant Tatro; and Plaintiff's proposed amended complaint. For purposes of the instant motion, the Court must consider only Plaintiff's version of the facts. See Popp Telcom v. American Sharecom, Inc., 210 F.3d 928, 944 (8th Cir. 2000); Swanlund v. Shimano Indus. Corp., 459 N.W.2d 151,154 (Minn. Ct. App. 1990). Plaintiff's version of events is outlined below.

On the evening of May 12,1999, Defendant Tatro ("Defendant") was working as an off-duty, uniformed police officer for the Dayton-Hudson parking ramp. Plaintiff, while intoxicated, approached Defendant and asked to use the restroom. When told that the restrooms were closed, Plaintiff threatened to urinate in the alley. Plaintiff made good on his threat, and Defendant informed Plaintiff that he was under arrest. According to Plaintiff, when he finished urinating, he observed that Defendant had taken out his handcuffs and had turned his head to speak into his portable radio. At this point, Plaintiff fled.

A chase ensued, and Defendant through his flashlight at Plaintiff, missing him by six to twelve inches. At this point, Plaintiff was afraid Defendant would shoot him, so he stopped running.

When Defendant reached Plaintiff, he pushed Plaintiff with enough force to send him crashing through the wooden stop-arm gate of the parking lot in which they were now standing. Before Plaintiff could recover from this blow, Defendant struck Plaintiff in the head five times while holding handcuffs in his hand. Apparently, blows were delivered with the cuffs in both the opened and closed configurations. According to Plaintiff's expert, blows delivered with open handcuffs have the same effect as swinging a "sharpened claw" at someone. Blows delivered with closed handcuffs have the same effect as blows delivered with brass knuckles. Once Plaintiff recovered from these blows, he sat down on a metal bar located at the edge of the parking lot.

After Plaintiff had been seated for a few minutes, Defendant hit Plaintiff twelve more times in the head and torso. After a total of about seventeen blows, Plaintiff turned around and placed his hands behind his back to be handcuffed. At this point, Defendant struck Plaintiff five or six more times, causing Plaintiff to fall to the ground. Back-up officers arrived seconds after Plaintiff fell to the ground.

During the incident, Plaintiff never took an offensive stance or made an offensive move toward Defendant. In fact, throughout the incident Plaintiff had his hands up as if to protect himself.

As a result of Defendant's conduct, Plaintiff required stitches in his face and staples in his head. Plaintiff also lost three teeth as a result of the incident. Plaintiff contends that he continues to suffer both physically and emotionally.

**A. Plaintiff's State Law Claims**

In the District of Minnesota, a party must follow the requirements of Minn. Stat. §§ 549.191 and 549.20 to plead punitive damages for claims brought pursuant to Minnesota state law. See Ulrich v. City of Crosby, 848 F. Supp. 861, 866 (D. Minn. 1994) (citations omitted). A plaintiff seeking to assert a punitive damage claim may not include it in the initial complaint, but must move for leave to amend the complaint based on a prima facie showing of entitlement. See id. at 867; Minn. Stat. § 549.191. At this point in the litigation, "[t]he plaintiff is not required to demonstrate an entitlement to punitive damages per se, but only an entitlement to allege such damages." Id. (citation omitted). Prima facie evidence is evidence which, if unrebutted, would sustain a judgment in the moving party's favor. See Swanlund, 459 N.W.2d at 154 (citing Black's Law Dictionary 1071 (5th ed. 1979)). The term "prima facie"

does not describe a quantum of evidence, but a standard for designating meritorious claims. See id.

The quantum of evidence needed to plead punitive damages is prescribed by Minn. Stat. § 549.20, subd. 1(a), which requires "clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others." To be clear and convincing, the proof must be more than a preponderance but less than beyond a reasonable doubt. See Weber v. Anderson, 269 N.W.2d 892, 895 (Minn. 1978). "Where the evidence is sufficient to permit the Jury to conclude that it is 'highly probable' that the defendant acted with deliberate disregard for the rights or safety of others, the 'clear and convincing' standard [is] satisfied." Olson v. Snap Prods., Inc., 29 F. Supp. 2d 1027, 1036 (D. Minn. 1998) (quoting Ulrich, 848 F. Supp. at 868) (internal citations omitted). Deliberate disregard is statutorily defined as follows:

> (b) A defendant has acted with deliberate disregard for the rights or safety of others if the defendant has knowledge of facts or intentionally disregarded facts that create a high probability of injury to the rights or safety of others and:
>
> (i) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injuries to the rights or safety of others; or

> (ii) deliberately proceeds to act with indifference to the high degree of probability of injuries to the rights or safety of others.

Minn. Stat. § 549.20, subd. 1(b). The Court must not make any credibility determinations or consider any challenge to Plaintiff's evidence. See Swanlund, 459 N.W.2d at154.

Punitive damages are not intended to compensate a wronged plaintiff. See Ulrich, 848 F. Supp. at 867. Rather, punitive damages are intended to "both punish and deter" the wrongdoer and others from "intentional wrongs and deliberate disregard of the safety or rights of others." Molenar v. United Cattle Co., 553 N.W.2d 424, 429 (Minn. Ct. App. 1996) (citing Rosenbloom v. Flygare, 501 N.W.2d 597, 601 (Minn. 1993)).

A plaintiff's request to add a separate, independent count for punitive damages to the complaint is interpreted as a request to plead punitive damages for each relevant cause of action. See, e.g., Olson, 29 F. Supp. 2d at 1036-39 (dicta); Rosenbloom, 501 N.W.2d at 600-01 (dicta). Thus, the Court will examine Plaintiff's proffered evidence in the context of each of his state law claims. See, e.g., Ulrich, 848 F. Supp. at 869-73.

Plaintiff's state law claims include battery, assault, intentional infliction of emotional distress, negligent infliction of emotional distress, negligent hiring of Tatro, and negligent supervision of Tatro. The Court will address each claim separately.

**1. Battery**

A battery is an "intentional, unpermitted, offensive contact with another." Paradise v. City of Minneapolis, 297 N.W.2d 152, 155 (Minn. 1980) (citation omitted). However, the contact must be made with excessive force to constitute a battery by a police officer. See id. According to Plaintiff's evidence, Defendant repeatedly used excessive force on him. Plaintiff was not resisting, yet Defendant repeatedly beat him. According to the CIA report, "where deadly force is not authorized or required, [the] [o]fficer shall utilize the appropriate level of force, techniques and/or weapons to best de-escalate the situation and bring it under control quickly." (CRA Report at 7 (quoting [Rule] 5-304)). Plaintiff's evidence clearly and convincingly proves that Defendant violated this rule and used an inappropriate level force when arresting Plaintiff. Moreover, the video tape, which is mentioned in all the reports, indicates that Defendant had opportunities to re-evaluate his conduct, and he chose not to. Therefore, this was not "split second decision making," but rather a conscious decision to use excessive force. (Prelim. Rpt. Lou Reiter, ¶¶ 12, 13.)

Defendant's conduct in repeatedly beating Plaintiff when Plaintiff was not resisting or attacking, constitutes clear and convincing evidence that Defendant deliberately disregarded Plaintiff's right against being battered by a police officer. Consequently, Plaintiff is entitled to allege punitive damages for his battery claim.

**2. Assault**

Similarly, an assault is a threat to do bodily harm to another person, with the present ability to carry out the threat. See Cressy v. Republic Creosoting Co., 122 N.W. 484 (Minn. 1909). Plaintiff's evidence shows clearly and convincingly that Defendant threatened Plaintiff, and had the obvious ability to carry out the threat.. Thus, Plaintiff is permitted to allege punitive damages for his assault claim as well.

**3. Intentional Infliction of Emotional Distress**

Intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct; (2) which was intentional or reckless; (3) and caused emotional distress; (4) which was severe. Kelly v. City of Minneapolis, 598 N.W.2d 657, 663 (Minn. 1999) (citation omitted). Conduct is extreme and outrageous when it is "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 439 (Minn. 1983) (citation omitted). Distress is severe when "no reasonable man could be expected to endure [it]." Johnson v. Morris, 453 N.W.2d 31, 41 (Minn. 1990).

Plaintiff's evidence clearly and convincingly establishes that Defendant's conduct passed the bounds of human decency to the point where no reasonable man could be expected to endure it. At no time during the attack did Plaintiff sufficiently recover so as to become a threat to Defendant.

(CIA Rpt. at 7.) Plaintiff was sitting on a metal bar when Defendant began his second volley of blows. From the time Plaintiff saw Defendant's flashlight fly past his head, he was submissive. Plaintiff stopped running and was ready to obey Defendant when Defendant began his assault. When taking Plaintiff's allegations as true, the Court finds that Defendant's conduct was utterly intolerable to the civilized community. Therefore, Plaintiff is permitted to allege punitive damages for his intentional infliction of emotional distress claim as well.

### 4. Negligent Infliction of Emotional Distress, Negligent Hiring, and Negligent Supervision

Negligence cannot support a claim for punitive damages. See Swanlund, 459 N.W.2d at 156. Therefore, Plaintiff will not be allowed to allege punitive damages for his negligence claims.

## B. Plaintiff's Federal Law Claims

Plaintiff seeks to amend his complaint to include claims for punitive damages against Defendant Tatro based on his claims under 42 U.S.C. §§ 1983 and 1988. In the instant case, the deadline for amending the complaint was March 30, 2002. (Doc. No. 22.) In the District of Minnesota, a motion to amend a complaint after the deadline has passed requires a two-step analysis. First, the moving party must show good cause to modify the pretrial schedule in accordance with D. Minn. LR 16.3 and Federal

Rule of Civil Procedure 16(b). Only after good cause is shown to modify the schedule will the Court decide if justice requires granting the motion to amend.

### 1. <u>Good Cause to Modify the Pretrial Schedule</u>

Neither Party briefed the issue of good cause to amend the pretrial schedule. This may be because this case has a history of stipulated modifications of the scheduling order. The original scheduling order has been modified by stipulation of the Parties on three different occasions. (Doc. Nos. 20, 21, 22.) The most recent stipulation and order extended "all scheduling order dates one hundred twenty (120) days." (Doc. No. 22 at 2.) If the Court's math is correct, his resulted in a March 30, 2002 deadline for amending the complaint.

The Parties' history of agreeing to liberal scheduling order extensions, coupled with the fact that Defendant does not oppose the motion on this basis, leads the Court to assume that the Parties agree that good cause exists to modify the pretrial scheduling order. Moreover, given the fact that under Minnesota law Plaintiff could not bring his motion to amend for punitive damages until significant discovery was completed, the Court finds that good cause existed for not bringing a motion to amend for punitive damages under federal law until the same time. Therefore, the Court will proceed to step two of the analysis and address the issue the Parties did brief: whether the proposed amendment should be allowed under Federal Rule of Civil Procedure 15(a).

**2. Plaintiff's Motion to Amend the Complaint**

Once a moving party has demonstrated good cause to amend the pretrial schedule, the Court looks at the motion to amend the pleadings.

Federal Rule of Civil Procedure 15(a) governs a party's right to amend its pleadings, and leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Supreme Court has construed Rule 15(a) in the following way:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason - such as undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. - the leave sought should, as the rules require, be "freely given."

Forman v. Davis, 371 U.S. 178, 182 (1962).

The Eighth Circuit follows this liberal approach and reasons that a court should not deny a motion to amend unless the proffered claim is "clearly frivolous." Becker v. University of Nebraska, 191 F.3d 904, 908 (8th Cir. 1999) (citation omitted). Therefore, unless the claim is clearly frivolous, a court may not consider the likelihood of success on the merits when deciding whether to allow an amendment. See Popp, 210 F.3d at 944 (quoting Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 644 F.2d 690, 695 (8th Cir. 1981)). However, the right to amend is not absolute and denial of leave to amend may be justified by "undue delay, bad faith on the part of the moving party, futility

of the amendment or unfair prejudice to the opposing party." Sanders v. Clemco Indus., 823 F.2d 214, 216 (8th Cir. 1987) (citation omitted).

Punitive damages may be assessed in § 1983 actions. See Carlson v. Green, 446 U.S. 14, 22 (1980); Lykken v. Vavreck, 366 F. Supp. 585, 595 (D. Minn. 1973). Moreover, punitive damages may be assessed against an offending city employee who violates someone's constitutional rights. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 267-69 (1981).

Both Parties agree that Rule 15(a) allows for liberal amendment of the pleadings. (Pl. Mem. Supp. Mot. Amend at 3, Def. Mem. Opp. Mot. Amend at 3.) However, Defendants argue that Plaintiff has not demonstrated by clear and convincing evidence that Defendant Tatro acted with deliberate disregard for Plaintiff's rights or safety. The Court disagrees.

A police officer's use of force is not excessive if the officer's actions are "objectively reasonable" under the circumstances. See Nelson v. County of Wright, 162 F.3d 986, 990 (8th Cir. 1998) (quoting Graham v. Conner, 490 U.S. 386, 394 (1989)). When considering the objective reasonableness of an officer's actions, courts "should consider such factors as the severity of a suspected crime, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting or evading arrest." Id. (citation omitted). The Court may consider the severity of any injuries suffered by the plaintiff. See id.

In the instant case, Plaintiff has proffered evidence which establishes that Defendant's actions were not objectively reasonable under the circumstances. Plaintiff was being arrested for the non-violent crime of urinating in public. The video tape demonstrates that Plaintiff was not posing a threat to anyone's safety or resisting arrest. In fact, Plaintiff was actually sitting or lying on the ground during portions of the attack. As a result of the attack, Plaintiff suffered multiple injuries which required medical attention.

In this respect, the instant case is similar to Estate of Davis by Ostenfeld v. Delo, 115 F.3d 1388 (8th Cir. 1997), which Defendant cites. In Davis, a corrections officer repeatedly struck an inmate's head into the concrete floor while the inmate was not offering any resistence and while other corrections officers watched. See id. at 1390-92. The Eighth Circuit held that punitive damages were appropriate in such a case because the officers acted with reckless disregard for the inmates' rights and safety, and because the beating was motivated by malicious or evil intent. See id. at 1396.

The Court has no problem stating that Plaintiff's unrebutted evidence demonstrates that Defendant Tatro acted with reckless disregard for Plaintiff's rights and safety. Therefore, Plaintiff's claims are not clearly frivolous or futile, and the Court will not consider Defendants' arguments based on the merits. See Popp, 210 F.3d at 944.

Furthermore, the Court finds that Defendants will not be prejudiced by allowing this amendment. Since the Court has already allowed Plaintiff to amend his complaint to add claims for punitive damages under state law, an amendment to seek punitive damages for § 1983 violations does not introduce substantially new theories into the case. Moreover, the discovery deadline in this case is now July 1, 2002, and the trial ready date is now March 1, 2003. Therefore, Defendants will not be prejudiced by the timing of the amendments, especially in light of the fact that the Parties have already been conducting discovery for sixteen months. Defendants will have time to properly prepare their case. Accordingly, Plaintiff is entitled to allege punitive damages for his § 1983 claims.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Amend Complaint to Add a Claim for Punitive Damages (Doc. No. 23) is **GRANTED** as to his assault, battery, intentional infliction of emotional distress, and § 1983 claims and **DENIED** as to his negligent infliction of emotional distress, negligent hiring, and negligent

supervision claims. Plaintiff must serve and file his amended complaint forthwith.

Dated: May June 10, 2002

JONATHAN LEBEDOFF
Chief United States Magistrate Judge